UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

DANIEL COOK,

        Plaintiff,

v.

ERICA HUSS et al.,

        Defendants.
_____/

Case No. 2:22-cv-142

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden Erica Huss and Officer

Unknown Party #1, identified as the staff member who removed Plaintiff's legal documents from his locker.

Plaintiff alleges that while he was in administrative segregation, Defendant Huss authorized Defendant Unknown Party #1 to remove legal property from Plaintiff's approved legal locker. (ECF No. 1, PageID.5.) Plaintiff contends that these actions led to the loss of four complaints brought pursuant to § 1983 that were "ready to be filed with exhibits." (*Id.*) Plaintiff asserts that Defendants violated his right to access the courts and that their actions were "retaliatory due to the 4 stolen complaints (some of which named Huss as a Defendant) and deprived [him] of his property without due process." (*Id.*)

Specifically, Plaintiff alleges that on February 5, 2020, he was approved to keep legal property in a legal footlocker. (*Id.*) On November 8, 2021, Plaintiff was placed in segregation after being involved in a physical altercation. (*Id.*) Two days later, he received his property. (*Id.*) His legal property had been removed from the locker and placed in a duffel bag. (*Id.*, PageID.6.) Plaintiff was told that the "inspector" had removed his legal property from the locker. (*Id.*) His request to get the locker back was denied. (*Id.*)

After removing his legal property from the duffel bag, Plaintiff was "very upset, angered[,] and distressed with the condition of his documents." (*Id.*) He avers that many pages were "torn, tattered, and destroyed." (*Id.*) Plaintiff argues that many documents were missing, including four manila envelopes containing four completed § 1983 complaints with exhibits. (*Id.*) Plaintiff identifies those complaints as follows:

- Cook v. Huss, et al.—a complaint concerning interference with court access, denial of adequate medical care, and a conspiracy to cover up Plaintiff's blood disease and how he acquired it;

- Cook v. Huss, et al.—a complaint concerning denial of adequate exercise time and space;

- Cook v. Corizon and Schad—a complaint concerning denial of medical care, including a medication switch to codeine despite Plaintiff's allergy to such; and

- Cook v. Metiva and John Doe—a complaint concerning Plaintiff's placement on mattress restriction with no just cause.

(*Id.*, PageID.6–7.) Plaintiff avers that each of these complaints included various exhibits, including "notarized affidavits that detailed material facts and exhaustion of the administrative grievance procedures." (*Id.*, PageID.7.) Plaintiff had also included medical records, kites, and "a bunch of prisoner witness affidavits and declarations." (*Id.*) Plaintiff further alleges that several requests for Step One grievance forms were missing, and that he had requested these forms due to being placed on modified grievance access. (*Id.*)

Plaintiff raised the issue regarding his missing legal property and the denial of access to his legal locker with many individuals, all of whom "stated he should have access to his legal locker in his segregation cell but knew nothing about his missing legal documents." (*Id.*) Plaintiff also raised the issue with the Security Classification Committee (SCC) and during his misconduct hearing. (*Id.*) He was told that "they will check into it." (*Id.*, PageID.8.)

Plaintiff filed a grievance. (*Id.*) Defendant Huss responded that Plaintiff was not permitted to have his legal locker in his cell and that he could only have the "allowable limit of personal property." (*Id.*) Any excess legal paperwork would be "stored and made accessible to him for reasonable intervals to review/exchange within 48 hours of his request." (*Id.*) Months later, Plaintiff spoke to Defendant Huss at his cell. (*Id.*) He "verbally grieved to her about his legal property being removed from its approved locker [and] his documents [being] stolen and missing." (*Id.*) Defendant Huss told Plaintiff that she knew "nothing about the missing documents but she authorized that the documents (legal property) be removed from the foot locker and he [could] not have it while in [administrative] segregation." (*Id.*)

3

Plaintiff states that he is "in fear of retaliation" and fears officers "prying into his unsecure legal documents[,] destroying them, recording them[,] or even stealing them." (*Id.*) Based on the foregoing, Plaintiff asserts violations of his First and Fourteenth Amendment rights. He seeks compensation in the "amount it will cost for counsel to represent him in the 4 actions they interfered with." (*Id.*, PageID.9.) He also seeks an additional $10,000.00. (*Id.*) Plaintiff also asks that the Court "waive any statutes of limitations or deadlines." (*Id.*)

## II.     Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted *supra*, Plaintiff has asserted claims for violations of his First and Fourteenth Amendment rights.

### A. First Amendment Claims

#### 1. Retaliation

Plaintiff vaguely contends that Defendants' actions were "retaliatory due to the 4 stolen complaints (some of which named Huss as a defendant)." (ECF No. 1, PageID.5.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of

5

retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation in this action. While filing grievances and preparing lawsuits are protected activities, Plaintiff has alleged no facts to support his conclusion that Defendants retaliated against him because he prepared four § 1983 complaints, including some naming Defendant Huss. Nothing in Plaintiff's complaint can lead to an inference that Defendants were even aware that Plaintiff had prepared these complaints prior to the decision to remove them from his legal locker. Plaintiff merely concludes that because he prepared some civil rights complaints naming Defendant Huss, Defendants' actions must have been motivated by his activity. The Sixth Circuit, however, has been reluctant to find that temporal proximity between protected activity and adverse conduct, standing alone, is sufficient to establish a retaliation claim. *See Hill*, 630 F.3d at 476. Consequently, Plaintiff's speculative allegations fail to state a claim. The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claims.

### 2. Access to the Courts

Plaintiff also suggests that Defendants' actions violated his First Amendment right to access the courts. He bases his claim on the fact that his four completed § 1983 complaints were seized before he could file them.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover,

7

the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

As noted above, Plaintiff avers that four completed § 1983 complaints were seized from his locker and not returned. Plaintiff describes those complaints as follows:

- Cook v. Huss, et al.—a complaint concerning interference with court access, denial of adequate medical care, and a conspiracy to cover up Plaintiff's blood disease and how he acquired it;

- Cook v. Huss, et al.—a complaint concerning denial of adequate exercise time and space;

- Cook v. Corizon and Schad—a complaint concerning denial of medical care, including a medication switch to codeine despite Plaintiff's allergy to such; and

- Cook v. Metiva and John Doe—a complaint concerning Plaintiff's placement on mattress restriction with no just cause.

(ECF No. 1, PageID.6–7.)

A review of this Court's dockets, however, indicates that Plaintiff recently filed the latter two complaints raising his claims concerning the denial of adequate medical care and placement on mattress restriction. *See generally Cook v. Corizon, Inc.*, No. 1:22-cv-629 (W.D. Mich.); *Cook v. Leitheim*, No. 1:22-cv-630 (W.D. Mich.). Plaintiff, therefore, has not sufficiently alleged a lost remedy and cannot maintain an access to the courts claim premised upon the latter two complaints.

It does not appear that Plaintiff has initiated any lawsuits concerning the claims he details for the first two lost complaints, including a denial of adequate exercise time and space, denial of adequate medical care, and a conspiracy to cover up his blood disease and how he acquired it. Again, however, Plaintiff has not alleged any facts suggesting a lost remedy in his complaint. Given that Plaintiff was able to re-prepare the latter two complaints and successfully file them in this Court, the Court presumes that Plaintiff could do so with the first two complaints. Plaintiff alleges no facts to suggest otherwise. Consequently, Plaintiff cannot maintain access to the courts claims against Defendants, and the Court will dismiss such claims.

### B. Fourteenth Amendment Claims

Plaintiff also contends that Defendants violated his Fourteenth Amendment rights by depriving him of his legal property without due process. (ECF No. 1, PageID.5.) Plaintiff's claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process claim. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (eff. Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Plaintiff, therefore, fails to state a claim for the unconstitutional deprivation of his property.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to

§ 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: August 2, 2022 /s/ Jane M. Beckering
Jane M. Beckering
United States District Judge